**Agreed-Upon Redacted Copy – May be Made Public**

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NVT TECHNOLOGIES, INC.<br>21515 Ridgetop Circle<br>Suite 100<br>Sterling, VA 20166 | ) | |
| Plaintiff | ) | (Bid Protest) |
| v. | ) | Case No. 06-122C<br>(Judge Allegra) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE BASIS OF THE ADMINISTRATIVE RECORD**

Pursuant to Rule 56.1 of the Rules of the United States Court of Federal Claims, Plaintiffs moves for judgment on the basis of the administrative record. The reasons for this motion are fully set forth in the accompanying Memorandum of Points and Authorities.

DATED: March 23, 2006

Respectfully submitted,

/s Jeffrey A. Lovitky
Attorney for Plaintiff
1735 New York Ave., N.W., Suite 500
Washington D.C. 20006
Tel: 202-429-3393
Fax: 202-318-4013
Lovitky@aol.com

**Agreed-Upon Redacted Copy – May be Made Public**

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NVT TECHNOLOGIES, INC.<br>21515 Ridgetop Circle<br>Suite 100<br>Sterling, VA 20166<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | (Bid Protest)<br><br>Case No. 06-122C<br>(Judge Allegra) |

MEMORANDUM OF GROUNDS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE BASIS OF THE ADMINISTRATIVE RECORD

Jeffrey A. Lovitky
Attorney for Plaintiff
1735 New York Ave., N.W., Suite 500
Washington D.C. 20006
Tel: 202-429-3393
Fax: 202-318-4013
Lovitky@aol.com

DATE: March 23, 2006

**TABLE OF CONTENTS**

Table Of Authorities ........................................ ii

Questions Presented ........................................ 1

Summary of Argument ........................................ 2

Argument Of Law ........................................ 2

I. Plaintiff Will Suffer A Specific Irreparable Injury If Performance Is Not Enjoined. ........................................ 3

II. Plaintiff Is Likely To Succeed On The Merits Of The Claim. ........................................ 4

A. Plaintiff Would Have Had A Substantial Chance Of Receiving An Award Had Defendant Conducted A Comparative Evaluation Between The Proposals Submitted By NVT And ........................................ 4

B. The SelectTech Offer Dated September 20, 2005 Was Improperly Accepted Because It Was Late ........................................ 6

C. The Agency Should Have Provided All Offerors In The Competitive Range With An Opportunity To Submit A New FPR If It Wanted To Consider SelectTech's Late Offer ........................................ 7

D. The Past Performance Evaluation Was Arbitrary And Capricious When The Agency Never Reviewed The Past Performance Information Contained In NVT'S FPR ........................................ 8

III. The Harm To Plaintiff Outweighs Any Harm To Defendant And Third Parties. ........................................ 9

IV. Granting The Requested Relief Serves The Public Interest. ........................................ 10

Conclusion ........................................ 11



**PROTECTED MATERIAL – TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)………………………..6

*Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005……………………7

*Beta Analytics Int'l, Inc. v. United States*, 44 Fed. Cl. 131, 139 (1999)…………………..9

*Blue DOT Energy Co. v. United States*, 2004 U.S. Claims LEXIS 330 .............................3

*Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983). ...................................................3

*City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998)………………6

*Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). ............................................3

*Data General Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996)………………...6, 8

*D & N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003)……………………6

*Gentex Corp.* v. *United States*, 58 Fed. Cl. 634, 654 (2003). ............................................3

*International Res. Recovery, Inc.* v. *United States*, 60 Fed. Cl. 1, 8 (2004).......................3

*PGBA, LLC* v. *United States*, 57 Fed. Cl. 655, 664 (2003) ...............................................3

*Sampson v. Murray*, 415 U.S. 61, 88 (1974). ......................................................................3

*United Int'l Investigative Servs., Inc*. v. *United States*, 41 Fed. Cl. 312, 323 (1998). .........3

*Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983). ........................2

**Statutes**

28 U.S.C. § 1491(b)(2)........................................................................................................3

**Regulations**

FAR 15.206(c)…………………………………………………………………….....8

FAR 15.206(g)(7)…………………………………………………………………….8



**PROTECTED MATERIAL – TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

FAR § 15.208…………………………………………………………..………..7, 10

FAR 15.306(c)(1)………………… ……………………………………………………8

FAR § 15.307(b)……………………………………………………………7, 8, 10

FAR 52.215-1(c)(2) ..........................................................................................................5

FAR 52.215-1(c)(3) ..................................................................................................2, 7, 10

**GAO Decisions**

Locus Technology, Inc., Comp. Gen. B- 293012, January 16, 2004……………………...9



**PROTECTED MATERIAL – TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

Agreed-Upon Redacted Copy – May be Made Public

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NVT TECHNOLOGIES, INC.<br>21515 Ridgetop Circle<br>Suite 100<br>Sterling, VA 20166 | |
| Plaintiff | (Bid Protest) |
| v. | Case No. 06-122C<br>(Judge Allegra) |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM OF GROUNDS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE BASIS OF THE ADMINISTRATIVE RECORD**

# Questions Presented

1. Will Plaintiff suffer irreparable injury if continued contract performance is not enjoined?
2. Did SelectTech submit a firm binding offer on August 24, 2005?
3. Did the Defendant act improperly in accepting the SelectTech late offer dated September 20, 2005?
4. Was the past performance score assigned to NVT arbitrary and capricious when the FPR submitted by NVT was not considered in the Past Performance Evaluation?
5. Does the public interest weigh in favor of granting injunctive relief?

## Summary of Argument

Solicitation No. FA8601-05-R-0034 was issued by the U.S. Air Force on May 24, 2005. See Administrative Record ("AR"), at Tab 6, p. 218. The due date for initial proposals was June 30, 2005. See AR Tab 7, RFP Amendment 1, at p. 342. Discussions were conducted, and Final Proposal Revisions (FPR) were due on August 24, 2005. See AR at Tab 21, pp. 511-512 (letter to NVT requesting FPR); See also letter from agency to SelectTech dated August 17, 2005 requesting FPR, AR, Tab 84, pp. 4537 – 4538.

The SF 33 accompanying the proposal submitted by the awardee, SelectTech Services, Inc. ("SelectTech"), on August 24, 2005 was marked "*DRAFT*". AR, Tab 25, p. 973. Defendant did not accept the August 24, 2005 submission from the awardee. Instead, Defendant accepted a submission from the awardee dated September 20, 2005. See AR at Tab 84, pp. 4529. SelectTech's September 20, 2005 offer was late, and its acceptance was precluded by FAR 52.215-1(c)(3).

Additionally, Defendant requested that NVT submit a Final Proposal Revision. See AR at Tab 21, pp. 511-512 (letter to NVT requesting FPR). However, the agency failed to even review the contents of the FPR submitted by NVT. This constituted arbitrary and capricious conduct.

## Argument of Law

The Court uses a consistent standard in determining whether a preliminary injunction is appropriate. Plaintiff must show: (1) that it will suffer a specific irreparable injury if performance is not enjoined; (2) that it is likely to succeed on the merits of the claim; (3) that the harm to plaintiff outweighs any harm to defendant and third parties; and (4) that granting the

requested relief serves the public interest. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

## I. <u>Plaintiff Will Suffer a Specific Irreparable Injury If Performance Is Not Enjoined</u>

The question of irreparable injury turns on whether movant will, absent an injunction, have an adequate remedy at law should it prevail upon a trial on the merits. *See Sampson v. Murray*, 415 U.S. 61, 88 (1974). An injury is 'irreparable' only if it cannot be undone through monetary remedies. *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). *See also Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983). Although Plaintiff has a legal remedy if successful in this action, that remedy, if Defendant proceeds toward completion of the subject project, is limited to recovery of bid preparation costs. *See* 28 U.S.C. § 1491(b)(2). This remedy would not adequately compensate Plaintiff for lost profits to which it would be entitled if it were to receive an award.

This Court has previously held that a party demonstrates irreparable injury when it will be unable to recover lost profits if contract performance proceeds. *Blue DOT Energy Co. v. United States*, 2004 U.S. Claims LEXIS 330 (December 13, 2004). The loss of an opportunity to secure a profit has been recognized as "*significant harm*" warranting the issuance of an injunction. *See United Int'l Investigative Servs., Inc*. v. *United States*, 41 Fed. Cl. 312, 323 (1998); *see also*; *International Res. Recovery, Inc.* v. *United States*, 60 Fed. Cl. 1, 8 (2004) (lost opportunity to compete on a "*level playing field*" constitutes irreparable harm); *Gentex Corp.* v. *United States*, 58 Fed. Cl. 634, 654 (2003) ("*loss of profit stemming from a lost opportunity to compete on a level playing field has been found sufficient to constitute irreparable harm*");

*PGBA, LLC* v. *United States*, 57 Fed. Cl. 655, 664 (2003), *aff'd* 389 F.3d 1219 (Fed. Cir. 2004) (loss of business opportunity may constitute irreparable harm).

This Court has also recognized that loss of the opportunity to bid fairly and on equal terms itself constitutes an irreparable injury. *See Minor Metals, Inc. v United States*, 38 Fed. Cl. 16, 21 (1997). Clearly, this opportunity will have been lost to Plaintiff in the absence of the extraordinary relief requested. Plaintiff will have been effectively denied an opportunity to have received fair and impartial treatment of its proposal submitted in response to the solicitation.

## II. Plaintiff Is Likely To Succeed On The Merits Of The Claim.

### A. Plaintiff Would Have Had A Substantial Chance Of Receiving An Award Had Defendant Conducted A Comparative Evaluation Between The Proposals Submitted By NVT And

On August 24, 2005, SelectTech submitted a Final Proposal Revision (FPR). See AR, Tab 25, pp. 958-1057. The SF 33 accompanying this document was marked "*DRAFT*", in large upper-case letters. AR, Tab 25, p. 973. The Standard Form (SF) 33 is a document entitled "*Solicitation, Offer and Award*." Block 11 of the SF 33 sets forth the scope of the solicitation. Blocks 12-18 of the SF 33 represents the "Offer." Blocks 19-27 represents the award. AR, Tab 25, p. 973.[1]

[1] Block 12 of the SF 33 submitted by SelectTech on August 24, 2005 was partially obscured by the word "DRAFT." See AR, Tab 25, p. 973. However, the standard language in Block 12 reads as follows: "*In compliance with the above, the undersigned agrees, if this offer is accepted within ___calendar days (60 calendar days unless a different period is inserted by the offeror) from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule*." See AR Tab 15, p. 390.

SelectTech's SF 33 dated August 24, 2005 was not accepted by Defendant. Rather, the contracting officer stated that she considered SelectTech's SF 33 dated September 20, 2005 as representing its "*firm binding offer*." See AR, Para. XI(b), pp. 4528-4529.

Defendant acted correctly in not accepting SelectTech's offer dated August 24, 2005. It is well established that there are four basic elements which must be met to form a binding agreement with the government: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance and (3) consideration. Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003); D & N Bank v. United States, 331 F.3d 1374, 1378 (Fed. Cir. 2003); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998).

SelectTech's August 24, 2005 submission could not have served as a basis for a binding agreement with the government under the principles established by the Federal Circuit. The use of the term "DRAFT" on the SF 33 submitted by SelectTech created ambiguity as to whether it was submitting a "*firm binding offer*."[2] The existence of ambiguity in the August 24 submission negated any possibility of that document serving as the basis for an award.

The agency should have conducted a Price/Past Performance Trade-off ("PPT") based on the firm binding offers received as of August 24, 2005. See AR at Tab 6, at p. 270-271. Under this trade-off analysis, the agency was required to determine

[2] The awardee was also required to insert on the first page of its submission a "*statement specifying the extent of agreement with all terms, conditions, and provisions included in the solicitation and agreement to furnish any or all items upon which prices are offered at the price set opposite each item…*" See FAR 52.215-1(c)(2), incorporated by reference, at AR Tab 6, p. 252. However, no such statement appears anywhere in the awardee's submission dated August 24. This further indicates that Defendant acted correctly in not accepting SelectTech's submission dated August 24, 2005.

should have been favored over

.[3]

It is well established that "*to prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it*." See Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). This has been interpreted as requiring a demonstration by the Plaintiff that it would have had a "*substantial chance*" of receiving the award but for the agency's violation. Id As noted in Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005), this test "*is more lenient than showing actual causation, that is, showing that but for the errors Bannum would have won the contract*."

NVT would have been one offerors whose proposal should have been considered by the agency in a past performance/price trade-off analysis. As such, NVT would have had a "*substantial chance*" of receiving the award had such a trade-off analysis been performed. See Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

**B. The SelectTech Offer Dated September 20, 2005 Was Improperly Accepted Because It Was Late**

On September 20, 2005, SelectTech submitted a new SF 33. AR Tab 15, p. 390. On October 12, 2005, the contracting agency made an award by signing the SF 33 dated September 20, 2005. Id.

The SF 33 signed by SelectTech on September 20, 2005 clearly represented a new offer. In addition to executing a new SF 33, SelectTech also submitted new terms and conditions. For example, the offer dated September 20, 2005 specified that the minimum order amount for this

[3] was also in the competitive range. See AR at Tab 31, pp. 1108-1109. However, submitted the highest price in the amount of , and its past performance rating was . See AR Tab 12, p. 372, and AR Tab 13, p. 380. As such had no reasonable chance to obtain the award.

contract is $43,285. See AR at Tab 6, p. 219. This language was not contained in the submission dated August 24, 2005. The September 20, 2005 offer contained language restricting which government activity could place orders against the contract. See AR at Tab 6, p. 219. There was no counterpart language in the August 24, 2005 submission. The September 20, 2005 submission also incorporated standard FAR provisions which were not contained in the August 24, 2005 offer, and vice-versa. Compare Tab 6, pp. 235-237, with Tab 25, pp. 988-990.

The awardee's offer dated September 20, 2005 was clearly late. The agency's request for final proposal revisions required submission of FPR's not later than August 24, 2005. See AR at Tab 21, pp. 511-512 (letter to NVT requesting FPR); See also letter from agency to SelectTech dated August 17, 2005 requesting FPR, AR, Tab 84, pp. 4537 – 4538.

FAR § 15.307(b) requires that the agency establish a common cut-off date for receipt of final proposal revisions. FAR § 15.208 provides that offerors are responsible for submitting proposals, revisions, and modifications to the proper place at the proper time, and that late proposals may not be considered. FAR 52.215-1(c)(3), incorporated by reference into the RFP, also precluded acceptance of late proposals. AR, Tab 6, p. 252.

Acceptance of the September 20, 2005 late offer was highly prejudicial to NVT. Indeed, it effectively knocked both NVT and out of the competition. As noted in the Source Selection Document, SelectTech's proposal was to the proposals submitted by NVT and . See AR Tab 13, pp. 377-381. Both NVT's and proposals dated August 24, 2005 had little chance of prevailing against SelectTech's late proposal, assuming the accuracy of the past performance evaluation.

**C. The Agency Should Have Provided All Offerors In The Competitive Range With An Opportunity To Submit A New FPR If It Wanted To Consider SelectTech's Late Offer**

The proper course for the agency would have been to proceed to a trade-off analysis based on the offers submitted by NVT and as of August 24, 2005. In the alternative, the agency could have asked for another round of Final Proposal Revisions from all offerors in the competitive range.

This court has noted in prior decisions that an agency "*is not without recourse if, after a solicitation is issued, it determines that a noncompliant proposal represents the best value to the Government.*" Beta Analytics Int'l, Inc. v. United States, 44 Fed. Cl. 131, 139 (1999). However, the proper recourse would have involved issuance of an amendment to the RFP establishing a new date for submission of FPR's. This amendment would have been required to be issued to all offerors in the competitive range. Id. See FAR 15.206(c).

The record does not indicate whether Defendant requested a new SF 33 from SelectTech, or whether SelectTech provided a new SF 33 on its own initiative. In either case, the agency acted improperly in accepting a new offer from SelectTech only. Rather, the agency should have amended the closing date for receipt of proposals, and provided all offerors in the competitive range with an opportunity to submit new FPR's. See FAR 15.206(c).

There were only offerors in the competitive range, including NVT. AR Tab 13, p. 378. By definition, the competitive range consists only of the "*most highly rated*" proposals. FAR 15.306(c)(1). NVT was one of the who should have been given an opportunity to submit a completely new FPR. NVT would have had a "*substantial chance*" of receiving the award, had it been provided with an opportunity to submit a revised FPR. Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

**D. The Past Performance Evaluation Was Arbitrary And Capricious When The Agency Never Reviewed The Past Performance Information Contained In NVT's FPR**

The agency raised concerns pertaining to the relevance of NVT's past performance during oral discussions with NVT. AR, Tab 23, p. 674. Accordingly, NVT's FPR provided additional detail pertaining to the relevance of its past performance. AR Tab 23, pp. 681-700.

However, the additional past performance information contained in NVT's FPR was not even considered in the evaluation. The Past Performance Evaluation Summary is undated. See AR, Tab 12, at pp. 370-376. However, it is clear that the Past Performance Evaluation Summary was finalized prior to the submission of NVT's FPR. Thus, the Past Performance Evaluation Summary concludes as follows: "*Based on the above, it is the Contracting Officer's recommendation that a letter be sent notifying the unacceptable offeror of the rejection of their offer and then begin procedures for discussions with the remaining offerors*." See AR, Tab 12, at p. 374. Further, the prices reflected in the Past Performance Evaluation Summary reflected initial proposal prices, and not prices as changed by the FPR's. AR, Tab 12, p. 375.

SelectTech's average past performance assessment score was out of a possible 5 points, whereas NVT's average score was . See AR, Tab 84, p. 4513. However, the difference in the final past performance scores resulted from the lower relevance rating applied to NVT's assessment score. Id. It is therefore reasonable to assume that the additional information contained in the FPR pertaining to the relevance of NVT's past performance could have influenced the outcome of the evaluation.

This is precisely the situation which the GAO confronted in Locus Technology, Inc., Comp. Gen. B-293012, January 16, 2004. In that case, all of the contemporaneous evaluation documents reflected the agency's evaluation of the protester's initial proposal, and not its final proposal. The GAO sustained the protest, based upon the lack of any indication that the agency actually considered the information contained in the protester's FPR.

The agency asked for additional information in support of the relevance of NVT's past performance, and then ignored the additional information submitted. Requesting additional information, and then ignoring it, is quintessentially arbitrary and capricious conduct.

## III. **The Harm To Plaintiff Outweighs Any Harm To Defendant And Third Parties.**

Plaintiffs are seeking an order requiring that all offerors in the competitive range be provided with an opportunity to submit new final proposal revisions. In the interim, the agency could continue to obtain required services from SelectTech on the basis of an urgent procurement contract. Alternatively, the Court could allow performance by SelectTech to proceed under the current contract, pending a re-evaluation of competing proposals after receipt of new FPR's. As such, there would be no substantial harm to Defendant in enjoining the award.

Moreover, if award to SelectTech is permanently enjoined, then Defendant will not have been harmed since the award will have been found to be in violation of applicable statutes. *See Minor Metals, Inc. v United States*, 38 Fed. Cl. 16, 21 (1997). However, failure to enjoin the award would result in significant harm to the Plaintiff. NVT will loose the opportunity to have its proposal considered in conformance with the terms of the solicitation. Plaintiff will also loose the opportunity to compete for a contract which will extend for a period of 5 years, including options.

## IV. **Granting The Requested Relief Serves The Public Interest.**

The public policy of the United States clearly precludes the award of late proposals. This public policy is encapsulated by no less than three separate provisions of the Federal Acquisition Regulations; i.e., FAR § 15.307(b), requiring that the agency establish a common cut-off date for receipt of final proposal revisions; FAR § 15.208, requiring that offerors are responsible for

submitting proposals, revisions, and modifications to the proper place at the proper time, and further precluding acceptance of late proposals; and FAR 52.215-1(c)(3), also precluding acceptance of late proposals.

The concept of a deadline is essential to the smooth functioning of any system. Chaos would ensue if parties were permitted to submit their filings to this Court whenever they wanted, or students were permitted to submit their papers whenever they wanted, or taxpayers were permitted to submit their tax returns whenever they wanted. The same is true with respect to proposals. The smooth functioning of the public procurement system demands strict adherence to deadlines.

Further, bidders for government contracts have no incentive to furnish the government with meaningful final proposal revisions if these revisions will be ignored. The failure of the government to even review an offeror's final proposal revisions tends to undermine confidence in the integrity of the procurement system, thereby reducing the competition ultimately available.

## Conclusion

In conclusion, this Court should enjoin the award to SelectTech, and order that Defendant request new proposals from all offerors in the competitive range. Defendant's clearly illegal award threatens Plaintiff with damages that may not be cured through monetary relief. Further, the public interest is clearly served by enforcing strict adherence to established deadlines.

Contract performance is proceeding, and will likely continue at the same pace through September 30, 2010. However, each day of continued performance by SelectTech represents additional potential loss to NVT. Accordingly, Plaintiff respectfully requests that the Court continue its accelerated consideration of this case which it has so kindly provided to date.

Respectfully submitted,

Agreed-Upon Redacted Copy – May be Made Public

/s Jeffrey A. Lovitky
Attorney for Plaintiff
1735 New York Ave., N.W., Suite 500
Washington D.C. 20006
Tel: 202-429-3393
Fax: 202-318-4013

Date: March 23, 2006

**Certificate of Service**

I hereby certify that on March 23, 2006, a copy of the foregoing Plaintiff's Motion for Judgment on the Basis of the Administrative Record, and Plaintiff's Memorandum of Grounds and Authorities in support of Plaintiff's Motion for Judgment on the Basis of the Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

/s Jeffrey A. Lovitky