No. 06-122C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NVT TECHNOLOGIES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

# DEFENDANT'S PUBLIC CROSS MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

JAMES W. POIRIER
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6289

OF COUNSEL:
JEFFREY BRANSTETTER, MAJOR
Commercial Litigation Div.
Air Force Legal Service Agency
1501 Wilson Blvd., Suite 604
Arlington, VA 22209

April 14, 2006

Attorneys For Defendant

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S PUBLIC CROSS MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD . . . . . 1

SUMMARY . . . . . 1

STATEMENT OF FACTS . . . . . 5

ARGUMENT . . . . . 7

I. Standard Of Review . . . . . 7

II. The United States Is Entitled To Judgment . . . . . 10

A. SelectTech Submitted A Timely And Binding Offer . 10

B. The Air Force Reviewed the Past Performance Information Contained in NVT's August Submission 15

C. Minor Alterations To The List of Required Terms And Conditions In The Contract Awarded Do Not Invalidate The Award Of The Contract . . . . . 16

D. The Placement Of Ordering Information In The Contract By The Air Force Does Not Invalidate The Award Of The Contract . . . . . 19

CONCLUSION . . . . . 20

## TABLE OF AUTHORITIES


**CASES** **PAGE(S)**

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365 (Fed. Cir. 1999) ..... 8

Analytical & Research Tech. v. United States, 39 Fed. Cl. 34 (1997) ..... 8

Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) ..... 9

Crux Computer Corp. v. United States, 24 Cl. Ct. 223 (1991) ..... 9

E.W. Bliss Company v. United States, 77 F.3d 445 (Fed. Cl. 1996) ..... 8

Grumman Data Systems Corp. v. Dalton, 88 F.3d 990 (Fed. Cir. 1996) ..... 9

Keco Indus., Inc. v. United States, 203 Ct. Cl. 566, 492 F.2d 1200 (1974) ..... 9

Lockheed Missiles & Space Co. v. Bentsten, 4 F.3d 955 (Fed. Cir. 1993) ..... 9

M. Steinthal & Co. v. Seamans, 455 F.2d 1289 (D.C. Cir. 1971) ..... 9

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29 (1983) ..... 9

NVT Technologies, Inc. B-297524 (GAO, February 2, 2006) ..... 16

SCM Corp. v. United States, 227 Ct. Cl. 12, 645 F.2d 893 (1981) ..... 18

Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970) ..... 7

Statistica, Inc. v. Christopher,
102 F.3d 1577 (Fed. Cir. 1996) .......................... 8

Synetics, Inc. v. United States,
45 Fed. Cl. 1 (1999) .................................... 7

United States v. John C. Grimberg Co., Inc.,
702 F.2d 1362 (Fed. Cir. 1983) .......................... 10

**STATUTES**

5 U.S.C. § 706 .......................................... 7

5 U.S.C. § 706(2)(A) .................................... 8

5 U.S.C. § 706(2)(C) .................................... 8

5 U.S.C. § 706(2)(D) .................................... 8

28 U.S.C. § 1491(b)(4) .................................. 7

48 C.F.R. § 15.209(a) ................................... 11

48 C.F.R. § 52.215-1(c)(2)(ii) ..................... 10, 11, 12

48 C.F.R. § 204-1(b) .................................... 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NVT TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-122C |
| THE UNITED STATES, | ) | (Judge Allegra) |
| Defendant. | ) | |

DEFENDANT'S PUBLIC CROSS MOTION
FOR JUDGMENT ON ADMINISTRATIVE RECORD

Pursuant to RCFC 56.1, the defendant, the United States, respectfully requests that judgment on the administrative record be entered in favor of the United States.

SUMMARY

The plaintiff, NVT Technologies, Inc. ("NVT"), has alleged four separate grounds for overturning the award to SelectTech, Inc. ("SelectTech"):

1. the revised SelectTech offer, dated August 24, 2005, was defective and never accepted because the Form SF33 was marked "draft" and the Form SF33 did not contain a statement that the SelectTech offer would be held open for 120 days;

2. the Government failed to consider additional data submitted by NVT regarding its past performance;

3. the contract contained a slightly different list of standard contract clauses

incorporated by reference than the list contained in the solicitation and the model contract distributed to bidders in August; and

4. the contract contained certain limits upon making task orders against the contract that were not contained in the SelectTech offer.

None of these allegations have merit.

The first two allegations are simply factually incorrect.

Contrary to NVT's first contention, the SelectTech August proposal contained an original, signed Form SF33 that was not marked draft, and that stated the SelectTech offer would be held open for 120 days. A972. Indeed, this form was discussed in the body of the August proposal:

> Original signed SF33. Air Force Letter reference is paragraph 2.e. Proposal reference is Volume IV, page 28. The proposal contained a signed SF 33 on page 28 as requested but did not contain a completed Section B due to the confusing titles and row descriptors contained in that section which have no meaning for a Time and Material contract. However, the data normally contained in the Schedule was presented in Exhibit A of Volume IV on page 14 through 20.
>
> Attached please find the original signed SF 33 requested during discussions. As discussed, the signed originals of the Amendments SF30s are not being provided since they are listed on the original SF 33. The proposal did include copies of the SF 30s on pages 31 through 34.
>
> The Section B has been completed according to the directions of your office, utilizing the

> data provided in Exhibit A, <u>and is submitted as part of the attached model contract</u>.

A961 (emphasis added); <u>see</u> A974-81 (section B); A2340 (Government letter to SelectTech, dated August 17, 2005) ("Where is the original signed SF33, and where is the Section B Schedule (CLIN Pricing) located in your proposal?"). The document marked "draft" attached to the SelectTech August proposal was <u>not</u> the original Form SF33; it was the model contract. A2374.

Apparently, SelectTech signed the model contract, as well as the original Form SF33, to make clear that SelectTech was binding itself to the Schedule B CLIN prices. In any event, there is no "ambiguity" about what SelectTech was offering because its proposal precisely described the documents (original Form SF33 and model contract) that SelectTech submitted.

Contrary to NVT's second contention, the Government did consider the additional information submitted by NVT concerning its past performance. A4533 (contracting officer reviewed "NVT's FPR [final proposed revisions, <u>i.e.</u>, the additional past performance information] Vol. III past performance information" and concluded that no new information had been provided). However, the Government found the additional information to be vague and unconvincing, and so did not alter NVT's past performance score. A4533; <u>see</u> A4586 (contracting officer's

judgment confirmed by program manager in December 2005).

It is unclear why NVT believes that its third and fourth allegations describe violations of procurement law.

With regard to the third contention, even assuming for the sake of argument that the Government violated procurement law through its use of a computerized system for generating lists of contract clauses incorporated by reference, NVT has not alleged any prejudice from such violation. Obviously, having alleged no prejudice, NVT has also failed to prove any prejudice.

With regard to the fourth contention, the same is true. Even assuming for the sake of argument that the Government violated procurement law by placing statements in Schedule B that "The minimum order amount for this contract will be $43,285.00," A391, NVT has offered no evidence of prejudice. For example, NVT has not alleged that it made any assumptions about minimum order amounts that caused it to rely to its detriment upon some other assumption. Indeed, NVT has not even alleged that price was a determinative factor in the decision to choose SelectTech instead of NVT. Similarly, NVT has alleged no prejudice related to the Government's decision to add the words "ONLY THE 88 CONTRACTING SQUADRON WRIGHT-PATTERSON AFB, OH CAN PLACE TASK ORDERS AGAINST THIS CONTRACT" to Schedule B. A391; see A2485,2489 (88th Squadron initiated solicitation efforts).

We respectfully request that the Court enter judgment in favor of the United States.

STATEMENT OF FACTS

We have responded to NVT's proposed findings of fact in our counter statement of facts, and we have proposed certain supplemental findings of fact. For the convenience of the Court, we offer the following summary.

We agree with NVT's statement of background facts. A solicitation was issued in May, 2005. Discussions were conducted after the initial proposals were received. Final proposal revisions were due on August 24, 2005. SelectTech received the highest past performance score and offered the lowest price. **[ REDACTED ]** received the next best past performance score. **[ REDACTED ]** submitted the next lowest price.

Contrary to NVT's strained characterization of events, there was nothing remarkable about the award process.

The contracting officer determined that SelectTech's proposal (as amended in August) was best, as evaluated pursuant to the criteria in the solicitation. A377-81 (decision of contracting officer to select SelectTech, dated September 8, 2005); A2502 (responsibility determination, dated September 9, 2005).

A few days later, the legal review was completed. A2475. A

note to the lawyer stated:

> We are trying to get this awarded on or about 15 Sep 05. We have one Subject To item: a DD245 is which is being processed.

A2475 (emphasis added). On September 20, 2005, this last item, the completion of the Form DD245, was completed. A2477.

Also on September 20, 2005, the award to SelectTech was announced to the unsuccessful bidders (by email and letter), and the unsuccessful bidders were notified of the right to file a size challenge with the SBA. A2509-17.

On the same day, September 20, 2005, SelectTech executed a Form SF33 essentially identical to the Form SF33 submitted with the SelectTech August submission, but with slight alterations to the page ranges listed for attachments H, I and J. Compare A951 with A390. (The record is not clear whether the attachments (i.e., the remainder of the contract) was attached to the Form SF33 on September 20, 2005 when SelectTech signed.) Consistent with 48 C.F.R. § 204-1(b), Section IV of the standard contract format (solicitation sections K, L and M) was not identified as part of the physical contract awarded[1] in the SF33 generated by the Government and signed by SelectTech on September 20, 2005. A951. In contrast, SelectTech had included page ranges for

---

[1] By law, the section K representations are incorporated by reference. 48 C.F.R. § 204-1(b).

Section IV in its August proposal. A951.

On September 22, 2005, NVT filed a size protest. A2562. On October 12, 2005, the SBA ruled that SelectTech was a small business. A505-09.

On the same day, October 12, 2005, the contracting officer awarded the contract to SelectTech by counter-signing the Form SF33 (already signed by SelectTech) that she had previously gathered. A390-484.

## ARGUMENT

### I. Standard Of Review

The Air Force's decision to award the contract to SelectTech is reviewed by this Court under the standard set forth in 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4). In determining whether this standard has been met in a bid protest, this Court looks to whether the plaintiff has established that:

> (1) the procurement lacked a rational or reasonable basis, or
>
> (2) the procurement involved a clear and prejudicial violation of applicable statutes and regulations.

Synetics, Inc. v. United States, 45 Fed. Cl. 1, 5 (1999); accord Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970).

If the plaintiff demonstrates that the contracting officer violated a procurement statute or regulation, the Court will

scrutinize the procurement decision pursuant to the standards of the Administrative Procedures Act. 5 U.S.C. § 706(2)(A) ("not in accordance with law"); 5 U.S.C. § 706(2)(C) ("in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"); 5 U.S.C. § 706(2)(D) ("without observance of procedure required by law"). Where violation of a procurement statute or regulation is demonstrated, the protester must show:

> that there was a substantial chance it would have received the contract award but for that error.

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999); accord Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996) (Brooks Act jurisdiction).

If the protester fails to demonstrate that a procurement statute or regulation has been violated, then the review of the procurement decision is more deferential. E.g., 5 U.S.C. § 706(2)(A) ("arbitrary, capricious, and abuse of discretion"); E.W. Bliss Company v. United States, 77 F.3d 445, 447 (Fed. Cl. 1996) (whether the decision was "arbitrary and capricious toward the bidder-claimant"); Analytical & Research Tech. v. United States, 39 Fed. Cl. 34, 42 (1997) (applying arbitrary and capricious standard) (judicial review of agency procurement decisions "is extremely limited").

Under the arbitrary and capricious standard, a procurement

decision will be sustained so long as it has a rational basis. E.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983). In applying this standard, a reviewing court must not substitute its judgment for that of the agency. Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416-20 (1971); M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1303 (D.C. Cir. 1971). Instead, the Court's task is to ensure that the procurement official examined the relevant data, and articulated a rational connection between the facts found and the choice made.[2]

The arbitrary and capricious standard entrusts agencies "with a good deal of discretion in determining which bid is the most advantageous to the Government." Lockheed Missiles & Space Co. v. Bentsten, 4 F.3d 955, 958-59 (Fed. Cir. 1993); accord Grumman Data Systems Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996). In accordance with this statutory grant of discretion to the source selection official, this Court's equitable powers should be employed in a way that "best limits judicial interference in contract procurement." United States v. John C. Grimberg Co., Inc., 702 F.2d 1362, 1372 (Fed. Cir. 1983).

---

[2] Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co., 463 U.S. at 43; Keco Indus., Inc. v. United States, 203 Ct. Cl. 566, 579, 492 F.2d 1200, 1206-07 (1974) (procurement decision "totally lacking in reason"); Crux Computer Corp. v. United States, 24 Cl. Ct. 223, 226 (1991).

II. The United States Is Entitled To Judgment

A. SelectTech Submitted A Timely And Binding Offer

NVT's contention that the Government accepted a "late" offer from SelectTech is based upon the faulty premise that SelectTech failed to make a firm offer in August:

> The use of the term "DRAFT" on the SF 33 submitted by SelectTech created ambiguity as to whether it was submitting a "firm binding offer." (footnote 2 in brief)

NVT br. at 5 (emphasis in original).[3] As demonstrated above, this argument is based upon a false premise. The Form SF33 included in the August proposal was not marked "draft." A972; see A961.

In footnote 2 added at the end of the quoted sentence, NVT further contends that the SelectTech proposal was not a firm offer because it lacked a statement required by 48 C.F.R. § 52.215-1(c)(2)(ii):

> A statement specifying the extent of agreement with all terms, conditions and provisions included in the solicitation and agreement to furnish any or all items upon which prices are offered at the price set opposite each item.

48 C.F.R. § 52.215-1(c)(2)(ii); see NVT br. at 5, n.2. It is unclear whether this regulation applied in this case. The quoted

---

[3] "NVT br." refers to "Plaintiff's motion for judgment based upon the administrative record," filed by NVT on March 23, 2006.

instruction is required when no discussions will occur. See 48 C.F.R. § 15.209(a). It is understandable why such a statement would be especially important in such cases. In any event, the solicitation stated that it was possible that the contract would be awarded without discussions, A254, but subsequently a decision was made to hold discussions.

Even assuming that the statements were required, such statements were made in both the original SelectTech proposal and in the August submission. A935 (original SelectTech proposal) (two exceptions); A961 (August submission) (exceptions deleted); A951 (Form SF33 in original proposal) ("All offers are subject to all terms and conditions contained in the solicitation.") ("In compliance with the above, the undersigned agrees, if the offer is accepted within 120 calendar days . . . from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule."); A937-43 (price information); see A961 (discussing organization of price information in original proposal); A972 (same statements on original Form SF33 submitted in August); A974-81 (price information better organized in response to discussions with Government).

The only quibble that NVT has identified is that the

statement described in 48 C.F.R. § 52.215-1(c)(2)(ii) was not placed on the first page of the SelectTech proposal. However, no prejudice resulted. Indeed, the Government spotted the two limited exceptions identified in the original SelectTech proposal, and addressed these exceptions during discussions. A2339-40. In response, SelectTech removed even these very limited exceptions. A961.

In summary, the SelectTech proposal, as amended in August, was an unambiguous and binding offer. Furthermore, this offer was selected by the Air Force on September 8, 2005, subject to a responsibility determination, legal review, completion of Form DD245, and any SBA size challenge that might be filed. A377-81 (decision of contracting officer to choose SelectTech); A2502 (responsibility determination); A2475 (legal review); A2509-17 (announcing award to SelectTech on September 20, 2006, subject to any SBA size challenge).

In a somewhat related contention, NVT alleges that the Form SF33 sent to SelectTech and signed by SelectTech on September 20, 2005, was a "new offer" by SelectTech. NVT br. at 6 ("The SF 33 signed by Select Tech on September 20, 2005 clearly represented a new offer . . ."). However, this contention has no basis in the record.

No new offer was sought on September 20, 2005. To the

contrary, the imminent award to SelectTech was publicly announced on September 20, 2005. A2509-17.

The record indicates that the Air Force sent SelectTech a Form SF33 intended to serve as the cover sheet for the actual contract awarded:

> the signed SF33 by SelectTech was the actual contract award document . . .

A4528. Indeed, NVT casually acknowledges this obvious purpose in its brief:

> On October 12, 2005, the contracting officer made an award by signing the SF 33 dated September 20, 2005.

NVT br. at 6.

In its brief, NVT alleges that "SelectTech also submitted new terms and conditions" on September 20, 2005. NVT br. at 6. However, this claim has no basis in the record.

The Air Force generated the terms and conditions of the contract using a computerized system. A4529 ("The solicitation and contract documents are generated by a computerized contract writing system."). SelectTech never "submitted" new terms and conditions on September 20, 2005.

Indeed, there is no record evidence that SelectTech even saw the computer-generated contract terms on that date. Even if SelectTech did see the terms and conditions of the contract on September 20, 2005, there is no reason to conclude that

SelectTech was doing anything other than signing the contract that memorialized the acceptance of its offer by the United States. See A4529-30 (computerized program drops out standard clauses related to sections K, L and M when generating the final contract form).

In its brief, NVT emphasizes a statement made by the contracting officer in the course of the GAO proceeding. NVT has taken the statement out of context. The contracting officer was comparing the model contract to the contract:

> The word "draft" was on all of the model contracts and the document was not intended to be used as a firm binding offer to the government but rather to show what the final contract would look like upon award. In preparation for contract award our computerized contract writing system removes the "draft" mark. The SF33 signed by SelectTech [dated] 20 Sep 05 represents the firm binding offer.

A4528-29 (emphasis and brackets added).

Read in context, it is clear that the contracting officer was describing the routine use of a newly generated Form SF33 to use as the face page of the contract awarded. The contracting officer did not state that SelectTech made a new offer on September 20, 2005, or that the deciding official had somehow accepted the September 20 offer on September 8. At most, NVT has identified imprecise language in the contracting officer's statement to the GAO. The statement does not change the

overwhelming evidence of the real chronology contained in the administrative record.

The SelectTech proposal, as amended in August, was a firm, unambiguous proposal that was accepted by the United States. NVT's contention that the mere act of signing the cover page of the new contract constituted a new, "late" offer from SelectTech is without support in the record or in law.

B. The Air Force Reviewed the Past Performance Information Contained in NVT's August Submission

NVT alleges that the Air Force did not consider any of the past performance information submitted with its August proposal. NVT br. at 9. NVT is mistaken. A4533.

Upon receipt of the NVT August proposal, the contracting officer reviewed the two-page chart prepared by NVT, A686-87, purporting to demonstrate how relevant NVT's past performance was to the proposed statement of work. A4533.

The contracting officer was simply not persuaded that any significant information had been added. A4533 (contracting officer reviewed additional submission about relevancy of past performance data and concluded that the additional submission had added no new information); compare A609-17 (NVT proposal) with A686-87 (later submission of checklist characterizing relevancy); see A275 (solicitation) ("The Government is not bound by offeror's opinion of relevancy.").

The GAO agreed with the contracting officer:

> The agency contends that the chart provides, at best, only the most general description of work performed as it presents only the general categories of work listed in the RFP's performance work statement, without elaborating (either in the chart or in the narratives) about the specific projects and work actually performed under those categories and subtasks, in order for the agency to assess if the work performed is directly relevant to the identified tasks. Moreover, as evidenced by the chart in its FPR, NVT itself contends that only about half of the RFP's performance work tasks were performed under two of the three contracts (while all of the tasks were allegedly performed under its third contract). Since the record supports the agency's finding that the protester's proposal and FPR failed to provide sufficiently detailed descriptions of work to either allow for a more comprehensive review or support a higher relevance rating, and since it is clear that, even under NVT's self-assessment, as many as half the requirements were not involved in two of its three contracts, we see no basis to question the agency's assessment of the work presented as "somewhat relevant" to the current requirements.

NVT Technologies, Inc.,B-297524;B-297524.2 (February 2, 2006) 2006 CPD Lexis 30.

C. Minor Alterations To The List Of Required Terms And Conditions In The Contract Awarded Do Not Invalidate The Award Of The Contract

When the Air Force prepared the solicitation, the model contract, and the contract itself, a computerized contract-writing program generated the list of standard contract clauses

in the regulations that were incorporated by reference. A4528-30. There are minor variations in all three lists. E.g., A235-37 (solicitation); A988-90 (model contract); A406-08 (contract); see A4529-30 (discussing certain provisions).

For example, the following clause was included in the solicitation, but omitted in the model contract:

> 252.209-7001
>
> Disclosure of Ownership or Control by the Government of a Terrorist Country
>
> SEP 2004

A236.

In its brief, NVT assumes that only the terms and conditions in the model contract were accepted by SelectTech as part of its proposal:

> The September 20, 2005 submission also incorporated standard FAR provisions which were not contained in the August 24, 2005 offer . . .

NVT br. at 7 (emphasis added). However, this assumption is without merit. SelectTech accepted all the terms and conditions in the solicitation, and, to the extent that the solicitation may be deemed to have required acceptance of the terms and conditions in the model contract, in the model contract as well. A935 (original SelectTech proposal) (two exceptions); A961 (August submission) (exceptions deleted); A951 (Form SF33 in original

proposal) ("All offers are subject to all terms and conditions contained in the solicitation"); A972 (same statements on original Form SF33 submitted in August).

Furthermore, to the extent that the contract did not expressly include all the terms and conditions required by the solicitation, the contract may be deemed to contain such provisions by operation of law if the clauses meet certain criteria. SCM Corp. v. United States, 227 Ct. Cl. 12, 31-32, 645 F.2d 893, 903-04 (1981) (Christian doctrine) (regulation allowing auditors to exchange information incorporated into contract, as a matter of law). Accordingly, certain provisions, such as 252.209-7001 (Disclosure of Ownership or Control by the Government of a Terrorist Country, SEP 2004), may be part of the contract even though not expressly listed.

At the moment, it is not clear what standard clause was omitted in the contract, or added to the contract, by the computerized contract writing program that forms the basis for NVT's bid protest. Thus, it is impossible at this date to analyze whether the provision should be considered incorporated into the contract as a matter of law. Indeed, it is impossible at this date to make any meaningful analysis of NVT's vague claim.

Even if NVT were to establish that some procurement

violation occurred in connection with the computer-generated list of terms and conditions in the final contract, NVT will be required to allege and prove prejudice associated with such violation. NVT has not yet even alleged the violation, much less alleged or proved the prejudice.

D. The Placement Of Ordering Information In The Contract By The Air Force Does Not Invalidate The Award Of The Contract

In its brief, NVT alleges that the following phrases were not in the SelectTech proposal, but were added to the contract, at A391:

> The minimum order amount for this contract will be $43,285.00
>
> . . . ONLY THE 88 CONTRACTING SQUADRON WRIGHT-PATTERSON AFB, OH CAN PLACE TASK ORDERS AGAINST THIS CONTRACT

NVT br. at 7. On the face of this language, it appears to be ordering instructions added to the contract by the Air Force. See e.g., A2485,2489 (88th Squadron initiated solicitation efforts). We are aware of no indication in the record that SelectTech was in any way involved in adding these phrases.

NVT has not clearly identified why it believes that the addition of such ordering information violated procurement law. Even assuming for the sake of argument that the law was violated, NVT has failed to allege or prove any prejudice flowing from such violation.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court enter judgment in favor of the United States. NVT has not demonstrated any basis for invalidating the award of the contract. Accordingly, it is unnecessary to address the other three factors that must be considered before the entry of a permanent injunction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/S Donald E. Kinner
DONALD E. KINNER
Assistant Director

/S James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-307-6289
Fax: 202-514-6979

Attorneys for Defendant

OF COUNSEL

JEFFREY BRANSTETTER, Major
Commercial Litigation Div.
Air Force
Legal Service Agency
1501 Wilson Blvd
Suite 604
Arlington, VA 22209

April 14, 2004

CERTIFICATE OF FILING

I hereby certify that on April 20, 2006, a copy of the foregoing "DEFENDANT'S PUBLIC CROSS MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier