NO. 06-122C
(JUDGE ALLEGRA)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NVT TECHNOLOGIES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S PUBLIC REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-307-6289
Fax: 202-514-6979

Attorneys for Defendant

OF COUNSEL

JEFFREY BRANSTETTER, Major
Commercial Litigation Div.
Headquarters Air Force
Legal Operations Agency
1501 Wilson Blvd
Suite 604
Arlington, VA 22209

May 11, 2006

# TABLE OF CONTENTS

**PAGE(S)**

DEFENDANT’S REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT'S CROSS MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD ............ 1

I. SelectTech Submitted A Binding Offer ................ 2

II. The Agency Accepted The SelectTech August Proposal ........................................... 5

III. The Contracting Officer Reviewed Past Performance Data .................................. 10

CONCLUSION ................................................... 11

# TABLE OF AUTHORITIES

**CASE** **PAGE(S)**

American Employer Insurance Company v. United States, 812 F.2d 700 (Fed. Cir. 1987) .......................... 7

Condec Corporation v. United States, 369 F.2d 373 (Ct. Cl. 1966) ............................ 8

Conscoop Consorzia Fra Cooperative Di Prod. E Lavoro v. United States, 62 Fed. Cl. 219 (Fed. Cl. 2004) ........................ 8

Higgs v. United States, 546 F.2d 373 (Ct. Cl. 1976) ............................. 7

**REGULATIONS**

48 C.F.R. § 52-215-1(c)(3)(ii)(B) ................... 2, 7, 8, 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NVT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-122C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Allegra) |
| | ) | |
| Defendant. | ) | |

DEFENDANT’S PUBLIC REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT'S CROSS MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD

The plaintiff, NVT Technologies, Inc. (“NVT”), makes three arguments in its response to our cross motion. None have merit.

Two of the arguments raise only factual issues. In other words, NVT argues about the contents of the administrative record. Specifically, NVT contends that the winning bidder, SelectTech, Inc. (“SelectTech”), failed to make a binding offer, NVT Reply, at 1-3,[1] and that the contracting officer failed to consider NVT’s revised information about its past performance. NVT Reply, at 7-9. NVT is mistaken about the contents of the administrative record in both instances.

---

[1] “NVT Reply” refers to “Plaintiff’s response to defendant’s motion for judgment on the administrative record and reply in support of its motion for judgment on the administrative record,” filed electronically on May 3, 2006.

NVT's remaining argument is that no contract was formed because of a scrivener's error. Specifically, NVT cites the computer-generated list of standard contract clauses incorporated by reference in the contract, and NVT notes that this list is different from the list of standard contract clauses included in the solicitation and incorporated into the SelectTech offer. NVT Reply, at 4-7.

The computerized scrivener's error cited by NVT may or may not be a basis for a claim of reformation by SelectTech, but it does not support any claim for relief by NVT. Pursuant to the Federal Acquisition Regulation, a contracting officer may make a modification to an otherwise successful proposal if the modification makes the contract more favorable to the United States. 48 C.F.R. § 52-215-1(c)(3)(ii)(B).

I. SelectTech Submitted A Binding Offer

In its reply brief, NVT has revised its contentions concerning why SelectTech did not submit a binding offer, but the contentions continue to center upon the Form SF33:

> there are at least two separate versions of the SF 33, allegedly signed by SelectTech on June 30, 2005.
>
> . . . The existence of different versions of the allegedly same document creates significant doubt as to its authenticity.

NVT Reply, at 1-2 (emphasis added). NVT is mistaken in several ways.

SelectTech never "alleged" that it signed the Form SF33 included in its August Proposal "on June 30, 2005." The date on the form is the date of the offer -- not the date that the form is signed. A972 (block 18: "offer date"). In any event, SelectTech explained why a new Form SF33 was included with its August Proposal -- the agency had requested that another form be submitted:

> Attached please find the original signed SF 33 requested during discussions.

A961 (emphasis added). In other words, SelectTech acknowledged that the attached SF33 had been executed recently -- after the recent discussions.

Thus, there is no issue of "authenticity." SelectTech included a Form SF33 with its June proposal. A951. However, the agency did not spot the form in the SelectTech proposal, and asked SelectTech about the "missing" form in its letter seeking further discussions. A2340; see NVT response to PFUF 17 (admission);[2] see also A961 (SelectTech discussing missed

---

[2] "NVT response to PFUF" refers to "Plaintiff's reply to defendant's supplemental proposed findings of uncontroverted fact," filed electronically by NVT on May 3, 2006.

communications). Therefore, SelectTech submitted another Form SF33 at the request of the agency during discussions. A972 (second Form SF33); A961 (SelectTech discussing missed communications and why a new form was enclosed).

NVT complains that the August Form SF33 included the words "Net 30 Days" in block 13 (related to prompt payment discount). NVT Reply, at 2. However, NVT fails to explain why adding such a term would invalidate SelectTech's proposal. Obviously, it did not.

NVT contends that our characterization of the price proposal in the SelectTech August Proposal was a "stunning admission." NVT Reply, at 2. However, NVT does not articulate why this "admission" supports its contention that SelectTech failed to make a binding offer. In any event, NVT has identified no flaw.

Bidders propose prices in their proposals. Bidders do not supply a contract, fully executed by both parties, to the contracting officer. Accordingly, a proposed price schedule can never be more than a "draft" of the "Schedule B" ultimately included in the fully executed contract.

In any event, these semantics are beside the point. The plain fact is that SelectTech provided a written statement of the prices at which it was willing to perform, this statement satisfied the requirements of the solicitation, SelectTech's

proposed prices were accepted by the contracting officer, and those prices were incorporated into the contract. Nothing about this chronology was improper or inadequate.

Finally, NVT contends that the Form SF33 signed on September 20, 2005 was a new offer. NVT Reply, at 2. Even assuming for the sake of argument that this contention were true, this would not prove that the August Proposal was not a binding offer.

II. The Agency Accepted The SelectTech August Proposal

In early September, the agency reviewed SelectTech's August Proposal, and accepted this offer, subject to a responsibility determination, legal review, completion of Form DD254, and resolution of any SBA size challenge that might be filed.

This is clearly set forth in the administrative record. A377-81 (decision of contracting officer to select SelectTech, dated September 8, 2005); A2502 (responsibility determination, dated September 9, 2005); A2475 (legal review completed); A2477 (Form DD254 completed on September 20, 2005); A2509-17 (selection of SelectTech announced on September 20, 2005, and notice to unsuccessful bidders of a right to file a size challenge with the SBA).

In its reply and associated papers, NVT ignores the selection process, and unreasonably concludes that the agency

"accepted" an "offer" [Form SF33, dated September 20, 2006] that occurred after the selection process occurred:

> Award was made on the basis of SelectTech's offer dated September 20, 2005, and not August 24, 2005. AR390.

NVT response to PFUF 24. The only support in the administrative record offered for this contention is the cover sheet of the executed contract. As we explained in our initial brief, the mere execution of a formal contract document does constitute a new, late "offer."

In its reply, NVT contends that the executed contract should be considered a new offer because the contract incorporates by reference standard contract clauses somewhat different from the standard contract clauses incorporated by reference into the solicitation and model contract -- which were incorporated by reference into the SelectTech August proposal:

> The new clauses were not noted by Plaintiff for the purpose of proving that the inclusion of these specific clauses was prejudicial. Rather, the issue was raised for the purpose of demonstrating that the September 20, 2005 submission constituted a new offer. . . . And that offer was late.

NVT Reply, at 4.

First, there are factual errors in NVT's characterization. There was no "submission," dated September 20, 2005. There was only an executed cover page to the contract. A390.

Second, NVT has not specifically identified any difference between the terms of the contract and the terms of the August offer. Some standard clauses omitted in the contract may very well be included in the contract by operation of the Christian doctrine. See A4529-30.

Third, assuming for the sake of argument that there is some difference between the standard contract clauses incorporated in the SelectTech August proposal and the clauses incorporated into the contract executed in October, the administrative record establishes that such errors are mere “scrivener’s errors” caused by the operation of the computerized contract-writing program. A4529-30.

To be blunt, the agency intended to accept the SelectTech August Proposal. Indeed, this decision process is amply documented in the administrative record. If the contract executed in October differed from the SelectTech August Proposal because the contract contained some different standard contract clauses, this difference was not intended; it was the inadvertent consequence of the computerized contract-writing program. Id.

Such a scrivener’s error may, or may not, be an adequate basis for a claim for reformation by SelectTech. See American Employer Insurance Company v. United States, 812 F.2d 700, 705 (Fed. Cir. 1987); Higgs v. United States, 546 F.2d 373, 374-76

(Ct. Cl. 1976). However, such a scrivener's error, alone, is not sufficient to support a challenge to the award.

Assuming for the sake of argument that the computerized scrivener's error had the practical effect of modifying the proposal in line for award, such modifications are permitted by the Federal Acquisition Regulation so long as those modifications favor the United States:

> However, a late modification of an otherwise successful proposal that makes its terms more favorable to the Government will be considered any time it is received and will be accepted.

48 C.F.R. § 52-215-1(c)(3)(ii)(B) (emphasis added); accord Condec Corporation v. United States, 369 F.2d 373, 374-76 (Ct. Cl. 1966); see Conscoop Consorzia Fra Cooperative Di Prod. E Lavoro v. United States, 62 Fed. Cl. 219, 240 (Fed. Cl. 2004).

In this case, SelectTech had been selected for award prior to September 20, 2005; SelectTech's proposal was undeniably an "otherwise successful proposal" within the meaning of the regulation. Thus, assuming for the sake of argument that there were some standard contract clauses in the contract, or missing from the contract, any such modification was permissible so long as it was "more favorable to the Government." 48 C.F.R. § 52-215-1(c)(3)(ii)(B).

The rationale for this regulation is that a competing bidder is not disadvantaged if terms are made more onerous for the winning bidder. See Condec, 369 F.2d at 374-76. In other words, in this case, NVT must demonstrate "prejudice" from any change to the standard contract clauses. NVT must demonstrate that the modification (if any) permitted SelectTech to bid on more favorable terms than the terms required of other bidders. NVT has offered no such evidence.

Fourth, the same regulation addresses NVT's "late offer" contention. Indeed, the purpose of subsection (3)(ii)(B) is to make clear that revisions to an otherwise successful offer do not constitute late offers (if the revisions are more favorable to the Government). 48 C.F.R. § 52-215-1(c)(3)(ii)(B); see 48 C.F.R. § 52-215-1(c)(3) (late rule generally).

In summary, glitches caused by the computerized contract-writing program are unfortunate, and agencies tolerate such glitches at their peril because if the modification resulting from such a glitch is more favorable to the successful offeror, then the agency will lose the safe haven provided by subsection 3(ii)(B). However, this is not such a case. NVT has offered no proof that there was any difference in standard contract clauses that could not be remedied by applying the Christian doctrine to bring such clause into the contract. Furthermore, even assuming

that there were some such differences, NVT has not offered any proof that they collectively resulted in a modification more favorable to SelectTech.

III. The Contracting Officer Reviewed Past Performance Data

Pursuant to the Court's rules, the proceedings before the General Accountability Office ("GAO") are part of the administrative record in this case. RCFC Appendix C, ¶ 22(u). In this case, the contracting officer submitted a statement to the GAO that she considered the past performance data submitted by NVT in August prior to the award decision:

> Upon receipt of the FPR [in August 2005] all of the protester's past performance information was reevaluated and it was determined by the CO that there were no significant change from the initial submission to the final submission.

A4533 (emphasis and bracketed words added). This is record evidence refuting NVT's challenge based upon the alleged failure to consider its revised past performance information.

In its reply, NVT complains that there is no contemporaneous document supporting the contracting officer's statement to the GAO:

> There is not a shred of contemporaneous documentation reflecting that the contracting officer conducted any review of NVT's FPR.

NVT Reply, at 8. However, no contemporaneous record is needed. All that is needed is evidence in the administrative record.

NVT concedes that the initial evaluation of its past performance data was not arbitrary. NVT's sole contention supporting its argument that the agency's review of its past performance data was arbitrary rests upon NVT's allegation that its revised data was ignored. The statement of the contracting officer rebuts this allegation.

## CONCLUSION

For the reasons stated above and in our initial brief, we respectfully request that the Court enter judgment in favor of the United States. NVT has not demonstrated any basis for invalidating the award of the contract. Accordingly, it is unnecessary to address the other three factors that must be considered before the entry of a permanent injunction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL

JEFFREY BRANSTETTER, Major
Commercial Litigation Div.
Headquarters Air Force
Legal Operations Agency
1501 Wilson Blvd
Suite 604
Arlington, VA 22209

/S Donald E. Kinner
DONALD E. KINNER
Assistant Director

/S James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-307-6289
Fax: 202-514-6979

May 11, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 15, 2006, a copy of the foregoing "DEFENDANT’S PUBLIC REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT'S CROSS MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier