**AGREED UPON REDACTED COPY – MAY BE MADE PUBLIC**

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NVT TECHNOLOGIES, INC.<br>21515 Ridgetop Circle<br>Suite 100<br>Sterling, VA 20166 | (Bid Protest) |
| Plaintiff | |
| v. | Case No. 06-122C<br>(Judge Allegra) |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Jeffrey A. Lovitky
Attorney for Plaintiff
1735 New York Ave., N.W., Suite 500
Washington D.C. 20006
Tel: 202-429-3393
Fax: 202-318-4013
Lovitky@aol.com

DATE: May 3, 2006

Pursuant to the scheduled adopted by the Court, Plaintiff hereby files its Response to Defendant's Motion for Judgment on the Administrative Record, and its Reply in Support of its Motion for Judgment on the Administrative Record.

## I. SelectTech's Offer Dated August 24th Was Not A Firm Binding Offer

Defendant asserts that SelectTech's offer dated August 24th was a firm binding offer because it was accompanied by an original signed SF 33. See Def. Mem., at 12 (Docket #29). However, this argument is factually incorrect

SelectTech's initial proposal was submitted on June 30, 2005. AR, at 828. Defendant's letter to SelectTech dated August 17, 2005 requesting an FPR asked *"the offeror to identify where the original SF 33 was located in their original proposal."* See AR, pp. 4537 – 4538. In response to this request, SelectTech said that it was furnishing another copy of their original SF 33 dated June 30, 2005, with their FPR dated August 24, 2005. See AR, at 972. However, the SF 33 furnished with the proposal dated August 24, 2005 pertained to the awardee's initial proposal, and not to its proposal dated August 24, 2005.

Moreover, there are at least two separate versions of the SF 33, allegedly signed by SelectTech on June 30, 2005. The awardee stated that the SF 33 furnished with its August 24 submission was merely a copy of the SF 33 contained in its initial proposal dated June 30, 2005. AR at 961. However, this is not true. The space adjacent to Block 13 in the "copy" of the SF 33 submitted with the August proposal contains the words "*Net 30 Days*." AR at 972. The space adjacent to Block 13 (Discount for Prompt Payment) in the version of the SF 33 allegedly incorporated into the initial proposal is

blank. AR, at 951. The existence of different versions of the allegedly same document creates significant doubt as to its authenticity.

Moreover, Defendant points to the following language from SelectTech's proposal as supporting its contention that awardee intended to submit a firm offer:

> The Section B has been completed according to the directions of your office, utilizing the data provided in Exhibit A, <u>and is submitted as part of the attached model contract.</u>

(Emphasis added). <u>See</u> AR at 961. <u>See</u> <u>also</u> Def. Mem. at 3 (Docket # 29).

It is significant that the Section B pricing was submitted by the awardee as part of the "DRAFT" Model Contract. Any objective reading would lead to the conclusion that the Section B pricing was also "draft" as it was designated as part of the "DRAFT" Model Contract.

And, in a stunning admission, Defendant concedes that the schedule of prices contained in Section B of SelectTech's August 24, 2005 submission was merely a draft Thus, No. 23 of Defendant Supplemental Proposed Findings of Uncontroverted Facts states as follows: "*A draft Schedule B, setting forth proposed prices, appears in SelectTech's August submission at pages A974-81*." <u>See</u> No. 23 of Defendant Supplemental Proposed Findings of Uncontroverted Facts (Docket #31).

In any event, SelectTech's submission dated September 20, 2005 constituted a new offer with different terms and conditions. This Court has previously held that submission of a new offer operates as a revocation of prior offers. <u>See</u> <u>Integrated Bus. Solutions, Inc. v. United States</u>, 58 Fed. Cl. 420, 426 (2003). Indeed, there would have been no reason for SelectTech to submit its offer on September 20, unless it intended it to replace its earlier offers. As such, the agency could not have accepted any earlier offers

after its receipt of the September 20, 2005 offer, even assuming that the August 24, 2005 submission was a binding offer at the time it was received.

## II. Defendant's Argument As To The Acceptability Of The August 24, 2005 Proposal Is Misdirected, As That Proposal Was Never Accepted By The Government In the First Place

The issue of whether the August 24, 2005 proposal was legally capable of being accepted is overshadowed by the simple fact that the agency did not accept that proposal. Instead, the agency accepted SelectTech's offer dated September 20, 2005, as evidenced by the signature of the contracting officer. AR, at 390. Therefore, the issue to be resolved by this Court is not whether the agency properly accepted the August 24, 2005 offer, but rather whether the agency properly accepted the offer dated September 20, 2005.

The government does not address the issue of whether SelectTech's offer dated September 20, 2005 was late. Rather, the government attempts to rebut Plaintiff's assertion that SelectTech's September 20, 2005 submission constituted a new offer. <u>See</u> Def. Mem at 12-15 (Docket #29).

However, there can be no doubt that SelectTech's offer dated September 20, 2005 constituted a new offer. The September 20, 2005 SF 33 submitted by the awardee stated as follows: *In compliance with the above, the undersigned agrees, <u>if this offer is accepted within 120 calendar days</u> (60 calendar days unless a different period is inserted by the offeror) from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule*." AR, at 390.

The government further argues that the September 20, 2005 submission did not constitute a new offer, based on the fact that the government had already made its

determination to award to SelectTech on September 8. See Def. Mem. at 12 (Docket #29). However, the fact that the government had already made an internal decision to award to SelectTech had no bearing upon the awardee's decision to submit a new offer. It is telling that the government's award decision was not publicly announced until September 20, 2005. AR at 2514. This is the same date on which the awardee signed its SF 33. AR, at 390. This fact would strongly suggest that the government was waiting for a new offer from SelectTech before it made its public announcement.

The record does not provide any explanation as to why SelectTech submitted a new offer on September 20, 2005. However, there can be no doubt that a new offer was submitted on that date.

Defendant further alleges that no prejudice resulted from the fact that SelectTech's offer dated September 20, 2005 contained different clauses from the earlier submissions made by SelectTech. See Def. Mem. at 19 (Docket #29). However, this once again misconstrues Plaintiff's primary contention.

The new clauses were not noted by Plaintiff for the purpose of proving that the inclusion of these specific clauses was prejudicial. Rather, this issue was raised for the purpose of demonstrating that the September 20, 2005 submission constituted a new offer. See Pl. Mem. at 6-7 (Docket #22). And, that offer was late. See AR at pp. 511-512 (letter to NVT); and AR at pp. 4537 – 4538 (letter to SelectTech) requiring FPR's not later than August 24, 2005.

Federal Acquisition Regulations provide for a '*late is late'* rule. See 62 FR 51224 (September 30, 1997) (FAR Council commentary establishing the "*late is late*" rule). Late proposals, are not acceptable. See FAR § 15.208; 52.215-1(c)(3). Indeed, late

proposals should not even be opened by the contracting office. See FAR § 15.208(g). The issue of whether the changed clauses contained in the September 20th offer had any impact upon the evaluation is completely irrelevant. Rather, SelectTech's submission dated September 20, 2005 should never have even been considered by the procuring agency.

## III. Defendant's Reply Brief Raises New Doubts As To Whether A Binding Agreement Was Ever Formed Between SelectTech And The United States

In a remarkable admission, Defendant asserts that there is no evidence that SelectTech ever saw the terms and conditions associated with the September 20, 2005 offer. See Def. Mem. at 13 (Docket #29). The government states as follows: "*Indeed, there is no record evidence that SelectTech even saw the computer-generated contract terms on that date.*" Id. It would appear from the above statement that the computerized contract terms were printed out on September 20, 2005, and attached by the Defendant to the September 20, 2005 SF 33 after it was received.

This raises significant doubts as to the contents of the contract. The purpose of the SF 33 is to integrate the terms of the RFP and the awardee's offer into a single contract. The page numbers in Block 11 of the "DRAFT" SF 33 signed by SelectTech on August 23 correspond with the page numbers of the version of the Model Contract incorporated into the August 24 submission. Compare SF 33 at AR 973, with version of Model Contract at AR 974 – 1006. The page numbers in Block 11 of the SF 33 signed by SelectTech on September 20 correspond with the page numbers of the September version of the Model Contract. Compare SF 33 at AR 390, with version of Model Contract at AR 391 - 426.

The issue becomes which terms were incorporated into the contract. Was it the Model Contract attached to the August 24, 2005 offer, or was it the Model Contract which appears as part of the September 20, 2005 offer?

Defendant states that "*SelectTech's proposal, as amended in August, was a firm unambiguous proposal that was accepted by the United States*." See Def. Mem. at 15 (Docket # 29). However, this statement only adds to the confusion, as the award was based on the version of the SF 33 submitted in September (AR, at 390), which incorporated terms and conditions that SelectTech apparently never saw.

Defendant appears to recognize the problem in its brief, in stating as follows: "*At the moment, it is not clear what standard clause was omitted in the contract, or added to the contract, by the computerized contract writing program that forms the basis for NVT's bid protest*." See Def. Mem. at 18 (Docket # 29). Defendant does not attempt to clarify the confusion. In any event, there is significant doubt as to whether a binding agreement was ever formed between SelectTech and the United States, given the ambiguity as to exactly what terms and conditions are included in the contract.

As noted by the Federal Circuit, there are three basic elements which must be met to form a binding agreement with the government: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance and (3) consideration. Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003); D & N Bank v. United States, 331 F.3d 1374, 1378 (Fed. Cir. 2003); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998).

Obviously, the government's award decision was legally ineffective if it can not establish the terms and conditions upon which the award was made. The only recourse available to the Defendant at this stage is to solicit new offers.

SelectTech may or may not choose to submit a new offer. The other offerors in the competitive range may or may not choose to submit new offers. However, NVT will certainly submit a revised offer. As one of the offerors in the competitive range, NVT will have a "*substantial chance*" of receiving an award. Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). See also Alfa Laval Separation v. United States, 175 F.3d. 1365, 1367 (Fed. Cir. 1999) (holding that in order to show prejudice, plaintiff need only show "'*that it was within the zone of active consideration*'") (quoting CACI, Inc. - Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983).

**IV. The Past Performance Evaluation Was Arbitrary And Capricious When The Agency Never Reviewed The Past Performance Information Contained In NVT's FPR**

Defendant states that the contracting officer conducted a reevaluation of NVT's past performance, and found the additional information submitted to be "*vague and unconvincing.*" See Def. Mem. at pp. 3-4 (Docket #29). The contracting officer stated in her report to the GAO that the additional information submitted in the FPR was reviewed upon receipt, and was found to be "*essentially identical*" to the information contained in the initial proposal. AR at 4533.

The Past Performance Evaluation Summary, which evaluated NVT's initial proposal, stated as follows with respect to NVT's Past Performance:

.[1]

The evaluation materials do not contain any reference whatsoever to NVT's past performance information as being "*vague and unconvincing*." If the additional information submitted in NVT's FPR was "*vague and unconvincing*", then it simply could not have been "*essentially identical*" to the information contained in the initial proposal.

There is not a shred of contemporaneous documentation reflecting that the contracting officer conducted any review of NVT's FPR. The contracting officer's statement that she reviewed NVT's FPR upon receipt and found it to be essentially identical to the initial proposal, is not only after-the-fact and self-serving. It is also contradicted by the evaluation documents.

The only other document which Defendant cites is the statement of the Program Manager dated December 19, 2005. See Def. Mem. at p. 4 (Docket #29). However, the Program Manager clearly did not review NVT's FPR prior to award. AR at 4586. Indeed, the contracting officer admitted as much, when she stated that she was asking the Program Manager to independently evaluate the additional past performance information contained in NVT's FPR in connection with the GAO protest. AR at 4533. There would have been no reason to ask the Program Manager to conduct this evaluation, if he had already performed such an evaluation prior to award.

[1] Identical language was contained in the Source Selection Decision Document, dated September 8, 2004, except that the latter document omitted the last two sentences. AR at 379.

In sum, there is simply no evidence of any nature whatsoever to suggest that anyone in the agency ever looked at NVT's FPR prior to award.

Respectfully submitted,

/s Jeffrey A. Lovitky
Attorney for Plaintiff
1735 New York Ave., N.W., Suite 500
Washington D.C. 20006
Tel: 202-429-3393
Fax: 202-318-4013

Date: May 3, 2006

**Certificate of Service**

I hereby certify that on May 3, 2006, a copy of the foregoing Plaintiff's Response to Defendant's Motion for Judgment on the Administrative Record, and Reply in Support of its Motion for Judgment on the Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

/s Jeffrey A. Lovitky