# In The United States Court of Federal Claims

No. 06-122C

(Filed under seal: September 13, 2006)

(Reissued: October 18, 2006)[1]

NVT TECHNOLOGIES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Post-award bid protest; Motion for judgment on the administrative record; *Bannum* – difference between motion for judgment on the administrative record and motion for summary judgment; No ambiguity in final proposal revision; Effect of ambiguity on contract formation; Responsiveness; Agency action not arbitrary, capricious or otherwise contrary to law; Relief denied.

**OPINION**

*Jeffrey A. Lovitky*, Washington, D.C., for plaintiff.

*James W. Poirier*, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Peter D. Keisler*, for defendant.

**ALLEGRA, Judge:**

In this post-award bid protest action, the plaintiff, NVT Technologies, Inc. (NVT), seeks to set aside the award of a contract to SelectTech Services (SelectTech) for facility/laboratory management and equipment maintenance services at the Air Force Research Laboratories at Wright-Patterson Air Force Base in Ohio. NVT asserts, *inter alia*, that SelectTech did not submit a timely proposal that complied with the terms of the request for proposals. On the parties' cross-motions for judgment on the administrative record, this court finds that SelectTech made a timely and responsive proposal, that a contract properly arose, and that plaintiff's other protest grounds are erroneous.

[1] An unredacted version of this opinion was issued under seal on September 13, 2006. The parties were given an opportunity to propose redactions, but no such proposals were made. Accordingly, the opinion is issued in its original form, with minor corrections.

## I. BACKGROUND

On May 24, 2005, the U.S. Air Force (the Air Force) issued a request for proposals (RFP), number FA8601-05-R-0034. On June 6, 2005, it revised the RFP to set aside the procurement entirely for small business concerns. Offerors were advised that their proposals were to "include sufficient detail for effective evaluation and for substantiating the validity of stated claims" and that the award would be made to the offeror providing the agency with "the greatest confidence that it will best meet or exceed the requirements affordably." Three evaluation factors were listed in the RFP, in descending order of importance: mission capability, past performance and price. The RFP contained a trade-off clause that stated, "[i]f the lowest priced, mission capability (technically acceptable) offeror's performance confidence rating is less than exceptional/high confidence, the Government will accomplish a trade-off between price and past performance" to select the best offer. Initial proposals were due on June 30, 2005, after which discussions were to be conducted. Final Proposal Revisions (FPRs) were due on August 24, 2005.

Following discussions, four offerors submitted FPRs that were deemed in the competitive range – NVT, SelectTech, AdTech Systems Research, Inc. (AdTech), and JWK International Corp. (JWK). Based on its evaluation of these FPRs, the contracting officer assigned SelectTech and AdTech past performance risk ratings of "Satisfactory/Confidence," while NVT and JWK were assigned ratings of "Marginal/Little Confidence." NVT's relatively low past performance rating stemmed from the limited relevance of its past performance; the latter concern was raised in discussions, but, in the contracting officer's view, was not remedied adequately in NVT's final proposal. SelectTech submitted the lowest-priced offer ($16,342,247.00), while NVT submitted the second lowest-priced offer ($16,354,678.50).

On June 30, 2005, SelectTech submitted a signed Standard Form 33 (SF33) with its original proposal, which proposal acknowledged amendments that had been made to the RFP. That form, however, was overlooked by the Air Force, which, on August 17, 2005, wrote SelectTech querying, "[w]here is the original signed SF33, and where is the Selection B Schedule (CLIN Pricing) located in your proposal?" This topic arose during discussions between the Air Force and SelectTech. When SelectTech submitted its FPR on August 24, 2005, it included two signed SF33 forms: one was a copy of the original form dated June 30, 2005, while the second stated an offer date of August 23, 2005, and was marked "DRAFT." The latter word had been inserted, as a watermark, by the Air Force in the model contract provided to all the offerors in an e-mail on August 18, 2005. In a cover letter to its FPR, SelectTech stated that it was "pleased to submit its Final Proposal Revision (FPR) in response [to] the referenced 17 August 2005 letter." In an accompanying letter, a segment entitled "Original signed SF33" explained –

> The [initial] proposal contained a signed SF33 on page 28 as requested but did not contain a completed Section B due to the confusing titles and row descriptors contained in that section which have no meaning for a Time and Material contract. However, the data normally contained in the Schedule was presented in Exhibit A of Volume IV on page 14 through 20.

> Attached please find the original signed SF33 requested during discussions. As discussed, the signed originals of the Amendments SF33's are not being provided since they are listed on the original SF33. The proposal did include copies of the SF33's on pages 31 through 34.
>
> The Section B has been completed according to the directions of your office, utilizing the data provided in Exhibit A, and is submitted as part of the attached model contract.

The August proposal contained various provisions that addressed issues raised by the Air Force's August 17, 2005, letter.

As there were no offers rated "Exceptional/High Confidence," the agency used the aforementioned trade-off clause to choose between the two "Satisfactory/Confidence" offers, ultimately selecting the lower priced SelectTech over AdTech. As noted, SelectTech – the incumbent contractor for many of the services covered by the RFP – submitted the lowest price of all the offerors and received a higher past performance rating than NVT. On September 9, 2005, the contracting officer made a positive responsibility determination concerning SelectTech, and on September 13, 2005, a legal review of the award decision was completed. On September 20, 2005, the award to SelectTech was completed and announced to the other bidders. On that same day, SelectTech executed a Form SF33 essentially identical to the form it had submitted with its August submission, but with slight alterations in certain schedules. The Air Force generated this form, which served as the first page of the awarded contract.

On September 26, 2005, NVT filed a protest with the Small Business Administration (SBA), contending that SelectTech was not a small business. On October 12, 2005, the SBA rejected this protest. That same day, the contracting officer countersigned the Form SF33 that had been signed by SelectTech on September 20, 2005. On October 27, 2005, NVT protested the award to the Government Accountability Office (GAO). On February 2, 2006, the GAO denied the protest, finding that the evaluation and award decisions were reasonable, consistent with the terms of the solicitation, and in accordance with applicable procurement rules. *See NVT Technologies, Inc.*, 2006 C.P.D. ¶ 36 (2006).

On February 21, 2006, plaintiff filed a complaint with this court seeking injunctive and other forms of relief. Thereafter, the parties filed cross-motions for judgment on the administrative record. The court heard oral argument on those motions on May 17, 2006.

## II. DISCUSSION

We begin with common ground. As recently noted by this court, "[w]hile the standard for deciding a motion for judgment on the administrative record, pursuant to RCFC 56.1, bears some threshold similarities to that governing a motion for summary judgment under RCFC 56, it is different in several core respects." *Int'l Outsourcing Servs., L.L.C. v. United States*, 69 Fed.

Cl. 40, 45 (2005).[2] Highlighting those differences, the Federal Circuit, in *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005), recently held that courts must "distinguish . . . [a] judgment on the administrative record from a summary judgment requiring the absence of a genuine issue of material fact." *Bannum* held that the two principles commonly associated with summary judgment motions – that the existence of a genuine issue of material fact precludes a grant of summary judgment and that inferences must be weighed in favor of the non-moving party – are inapplicable to a motion for a judgment on the administrative record. *Id*. at 1356-57.[3] It thus made clear that, under former RCFC 56.1, the existence of a fact question neither precludes the granting of a motion for judgment on the administrative record nor requires this court to conduct a full blown evidentiary proceeding. *Id.*; *see also Int'l Outsourcing*, 69 Fed. Cl. at 46. Rather, such fact questions must be resolved by reference to the administrative record, as properly supplemented – in the words of the Federal Circuit, "as if [this court] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1357; *see also Int'l Outsourcing*, 69 Fed. Cl. at 46; *Carlisle v. United States*, 66 Fed. Cl. 627, 630-31 (2005); *Doe v. United States*, 66 Fed. Cl. 165, 174-75 (2005).[4]

---

[2] RCFC 56.1 was recently abrogated and replaced by RCFC 52.1. *See* Notice of Adoption of Amendments to Rules (June 20, 2006). The former rule, however, is applicable in this case.

[3] It should be noted that RCFC 52.1 was designed to incorporate the decision in *Bannum*. Regarding the new rule, the Rules Committee Note provides –

> Summary judgment standards are not pertinent to judicial review upon an administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1355–57 (Fed. Cir. 2005). Specifically, the now repealed Rule 56.1 did not adopt the overall standard that summary judgment might be appropriate where there were no genuine issues of material fact. *See* RCFC 56(c). Nonetheless, despite this omission, parties, in moving for judgment on the administrative record under the prior rule, frequently would contest whether the administrative record showed the existence of a genuine dispute of material fact. To avoid this confusion, the new rule omits any reference to summary judgment or to the standards applicable to summary judgment.

*See* RCFC 52.1, Rules Committee Note (June 20, 2006); *see also Bice v. United States*, 2006 WL 2560778 (Fed. Cl. Sept. 6, 2006).

[4] In *Bannum*, the Federal Circuit noted that, in *Banknote Corp. of Am. Inc. v. United States*, 365 F.3d 1345, 1352-53 (Fed. Cir. 2004), it had erroneously conflated the standards under RCFC 56 and 56.1, albeit in *dicta*. In this regard, the *Bannum* court stated that –

> Although it never reached the factual question of prejudice, the *Banknote II* court added that it is the trial and appellate courts' task to "determine whether there are any genuine issues of material fact as to whether the agency decision lacked a

The approach carefully mapped by the Federal Circuit in *Bannum* makes particular sense given the deferential review conducted in cases such as this. In a bid protest case, this court will enjoin defendant only where an agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (2006); *see also* 28 U.S.C. § 1491(b)(4) (2006). By its very definition, this standard recognizes the possibility of a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983); *see Software Testing Solutions, Inc. v. United States*, 58 Fed. Cl. 533, 538 (2003); *Gulf Group, Inc. v. United States*, 56 Fed. Cl. 391, 396 (2003). This court will interfere with the government procurement process "only in extremely limited circumstances." *C.A.C.I., Inc.-Federal v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983) (quoting *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983)).

It is the burden of the aggrieved bidder to demonstrate that the challenged agency decision is either irrational or involved a clear violation of applicable statutes and regulations. *Banknote Corp. of America*, 365 F.3d at 1351, *aff'g*, 56 Fed. Cl. 377, 380 (2003).[5] Further, "to

---

> rational basis or involved a prejudicial violation of applicable statutes or regulations." This language equates a RCFC 56.1 judgment to a summary judgment under RCFC 56 and is unnecessary to the *Banknote II* holding. Because the court decided the issue by an interpretation of the solicitation, e.g., making a legal determination, the court in *Banknote II* did not need to consider whether the trial court overlooked a genuine dispute or improperly considered the facts of that case.

*Bannum*, 404 F.3d at 1354. Prior decisions of this court have made the same error. *See, e.g.*, *JWK, Int'l Corp. v. United States*, 49 Fed. Cl. 371, 387 (2001), *aff'd*, 279 F.3d 985 (Fed. Cir. 2002). Indeed, while various decisions of this court refer to a "motion for summary judgment on the administrative record," *see, e.g.*, *ManTech Telecom. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 64-65 (2001), *aff'd*, 30 Fed. Appx. 995 (Fed. Cir. 2002), there was no such thing under former RCFC 56.1 (and is no such thing under RCFC 52.1), as properly construed.

[5] In *Banknote*, the Federal Circuit expounded upon these principles, as follows:

> Under the APA standard as applied in . . . [bid protest] cases, "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation of procedure." [*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)]. When a challenge is brought on the first ground, the test is "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a 'heavy burden' of showing that the award decision had no rational basis." *Id*. at

prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data General Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). To demonstrate prejudice, "the protestor must show 'that there was a substantial chance it would have received the contract award but for that error.' " *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). Finally, because injunctive relief is relatively drastic in nature, a plaintiff must demonstrate that its right to such relief is clear. *See Banknote Corp. of America, Inc.*, 56 Fed. Cl. at 380-81; *Seattle Sec. Servs., Inc.*, 45 Fed. Cl. at 566; *cf. Beta Analytics Int'l., Inc. v. United States*, 44 Fed. Cl. 131, 137 n.10 (1999).

In the case *sub judice*, plaintiff's banner claim is that SelectTech's proposal must be rejected because the FPR it submitted on August 24, 2005, included an SF33 that was marked "DRAFT,"giving rise to an ambiguity that, in plaintiff's view, precluded the Air Force from accepting the FPR in awarding the contract. Plaintiff submits that SelectTech did not resolve this ambiguity (and supply a FPR capable of being accepted by the Air Force) until it submitted an SF33 without the word "DRAFT" on September 20, 2005 – that date, of course, was well after the time set for receipt of FPRs. Plaintiff argues that the Air Force's acceptance of SelectTech's earlier, allegedly nonconforming proposal violated its obligation to treat all offerors equally. *See Banknote Corp. of America, Inc. v. United States*, 56 Fed. Cl. at 383 (describing this obligation); *Seattle Sec. Servs.*, 45 Fed. Cl. at 569 (same). In the court's view, this claim misses the mark for several reasons.

First, the record makes clear that there was no ambiguity in the August 24, 2005, FPR. SelectTech's FPR included not one, but ***two*** signed Forms SF33, only one of which included the word "DRAFT." The Air Force clearly was aware that it – and not SelectTech – had inserted the word "DRAFT" into the face of the SF33 as a watermark, with the intention of removing that word in the final version of the contract. Most importantly, any ambiguity that might otherwise have arisen here plainly was eliminated by the cover letter that SelectTech provided with its August 24, 2005, proposal, which plainly stated that the attached submission was its "Final Proposed Revision (FPR)" and which included a segment that explained how the SF33 submitted with that proposal was prepared. There is no indication whatsoever in the record that the Air Force found these circumstances confusing – indeed, there is every indication that the Air Force understood exactly what was happening. Accordingly, the only way for the court to conclude that an ambiguity existed here is if, like Old Dobbins (and apparently plaintiff), it dons blinders

---

> 1332-33 (citations omitted). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id.* at 1333.

*Banknote Corp.*, 365 F.3d at 1351; *see also Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 566 (2000); *Analytical & Research Tech., Inc. v. United States*, 39 Fed. Cl. 34, 42 (1997).

to the cover letter and other circumstances underlying the formation of the contract. But, the court refuses to indulge in such willful blindness, choosing instead to view the contracting documents *sub judice* in the context in which they arose. *Compare Info. Sys. & Networks, Corp. v. United States*, 68 Fed. Cl. 336, 342 (2005); *W & F Bldg. Maint. Co. v. United States*, 56 Fed. Cl. 62, 69 (2003) ("Before making a conclusive determination about an agreement's ambiguity, or lack thereof, the court should consider the context in which the agreement was executed."); *The Orkand Corp.*, 86-2 C.P.D. ¶ 723 at *5-8 (1986); *see also* John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts 156 (3d ed. 1995). And, in that context, there is indisputably no ambiguity here.

Assuming for the sake of argument there was some ambiguity, plaintiff has identified no legal basis upon which to conclude that the Air Force's actions were arbitrary, capricious or otherwise contrary to law. In arguing that the ambiguity allegedly created by the SF33 nonetheless meant that SelectTech's August 24, 2005, submission could not form the basis for an award, plaintiff alludes to cases that generally require that there be "lack of ambiguity" in offer and acceptance for a contract with the United States to arise. *See, e.g., Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003); *D & N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003); *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998). None of the cases cited, however, involved procurement contracts arising under the Federal Acquisition Regulation (FAR). Rather, they involved *bona fide* questions as to whether there was a meeting of the minds, usually because of the absence of an integrated agreement. Here, of course, there is an integrated agreement and no question whatsoever that the parties intended to enter into a contract, making the aforementioned cases inapposite. Moreover, to the extent these cases are tangentially relevant, it is relatively clear that an ambiguity in an offer will prevent the formation of a contract only if it is significant enough to prevent a meeting of the minds, which, in turn, requires (in addition to other things) that the ambiguity be material.[6] Lesser ambiguities, particularly in integrated agreements, and, especially, as to nonessential terms, simply present questions of interpretation – they neither preclude contract formation nor provide a basis for rescission.[7]

---

[6] *See* Restatement (Second) Contracts, § 20 (effect of a misunderstanding); *id.* at comment b ("Almost never are all the connotations of a bargain exactly identical for both parties; it is enough that there is a core of common meaning sufficient to determine their performances with reasonable certainty or to give a reasonably certain basis for an appropriate legal remedy."); *see also Consumers Ice Co. v United States*, 475 F.2d 1161, 1165 (Ct. Cl. 1973) (referring to ambiguities affecting the meeting of the minds as those that go "to the heart of the contract").

[7] *See id.* (reporter's note) ("It is important to distinguish between the common problem of interpretation of key terms of a contract and the much less common question whether a material difference of understanding has prevented the manifestation of mutual assent necessary to create a contract at all."); *see also Colfax Envelope Corp. v. Local No. 458-3M*, 20 F.3d 750, 753 (7th Cir. 1994) (Posner, J.) ("Intersubjectivity is not the test of an enforceable contract."); *Canada Life Assurance Co. v. Guardian Life Ins. Co.*, 242 F. Supp. 2d 344, 356 (S.D.N.Y. 2003) ("Not every misunderstanding between the parties following execution of an agreement could possibly

Consistent with these general contracting principles, plaintiff candidly admits that it has found no bid protest case invalidating an award on the basis of an allegation that a winning offeror's proposal was somewhat vague. Research reveals none – perhaps an unsurprising result given the mischief that such a rule would wreak. Indeed, the federal procurement system could scarcely function if every contract that sprang from a solicitation or proposal with an ambiguous term could be set aside. Circumstantially suggesting this is not the case, the courts, in fact, regularly deal with and resolve ambiguities in government contracts,[8] often making distinctions between types of ambiguities, such as patent versus latent ones.[9] In the world of the FAR, the only types of ambiguities that have been found to threaten contract formation are those material or essential enough to render a bid or proposal "nonresponsive" under FAR § 14.301(a).[10] On this count, the FAR amply makes clear that a minor informality or irregularity is not enough to derail a procurement. *See* 48 C.F.R. § 14.405; *Interstate Rock Prods., Inc. v. United States*, 50 Fed. Cl. 349, 355 (2001). Indeed, in words that in this case seem prescient, the FAR specifically provides that the failure to sign a bid is a minor informality provided the "undersigned bid is accompanied by other material indicating the bidder's intention to be bound by the undersigned bid . . . such as the submission of a letter signed by the bidder, with the bid, referring to and clearly identifying the bid itself." *Id*. at § 14.405(c)(1); *see also Johnny F. Smith Truck and Dragline Service, Inc*., 93-1 C.P.D. ¶ 427 (1993). This regulation, in the main, merely restates the well-accepted notion that "a bidder's intention must be determined from all the bid documents at the time of bid opening and this includes extraneous documents submitted with the bid which must be considered part of the bid for purposes of determining the bid's responsiveness." *John C. Grimberg*, 85-1 C.P.D. ¶ 478. Given all this, and considering the documents submitted by SelectTech (not to mention the discussions that preceded them), this court certainly cannot say that the Air Force lacked a rational basis in concluding that SelectTech's FPR was responsive.

---

void a contract, since almost any contractual dispute is based on some disappointment of expectations.").

[8] *See, e.g.*, *E.L. Hamm & Assocs. v. England*, 379 F.3d 1334, 1341-43 (Fed. Cir. 2004); *NVT Techs, Inc. v. United States*, 370 F.3d 1153, 1159-60 (Fed. Cir. 2004). Of course, the mere existence of these cases (and dozens like them) is further evidence that the presence of an ambiguity in contracting documents does not render a contract invalid under the FAR.

[9] *See, e.g.*, *E.L. Hamm*, 379 F.3d at 1341; *Stratos Mobile Networks, USA v. United States*, 213 F.3d 1375, 1380 (Fed. Cir. 2000); *Metric Constructors v. Nat. Aeronautics and Space Admin.*, 169 F.3d 747, 751 (Fed. Cir. 1999).

[10] *See also* FAR § 14.404-2(a); for cases discussing these requirements, *see, e.g., Firth Constr. Co. v. United States*, 36 Fed. Cl. 268, 274 (1996); *Sundt Corp.*, 96-2 C.P.D. ¶ 171 at *2 (1996); *John P. Ingram, Jr. & Assocs.*, 93-1 C.P.D. ¶ 117 at *2 (1993); *G.S. Links & Assocs.*, 90-1 C.P.D. ¶ 479, at *2 (1990); *John C. Grimberg Co.*, 85-1 C.P.D. ¶ 478 at *2 (1985); *see also E.W. Bliss Co. v. United States*, 33 Fed. Cl. 123, 138-39 (1995).

In sum, plaintiff has not demonstrated that the sort of ambiguity assertedly encountered here precluded the Air Force from accepting SelectTech's offer or otherwise caused plaintiff to be treated unequally. Of course, for the record, plaintiff has not shown any ambiguity, at all.

Finally, if the absence of legal error were not reason enough to reject the request for relief, the court observes that plaintiff has not proven that it was prejudiced by any alleged violation of law. As noted above, to demonstrate prejudice, a "protestor must show 'that there was a substantial chance it would have received the contract award but for that error.' " *Alfa Laval Separation*, 175 F.3d at 1367 (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)); *see also Int'l Outsourcing Servs.*, 69 Fed. Cl. at 47. Here, plaintiff asserts that had the Air Force recognized the alleged ambiguity in SelectTech's FPR, it would have been compelled to require the offerors in the competitive range to submit new FPRs. Notably, it does not assert that SelectTech should have been barred from resubmitting a FPR. Nor has it shown that the revised FPR that it would have submitted under this scenario would have been substantially different from the one it actually submitted, particularly since the issue that led to its proposal being lower rated had been identified by the Air Force in the round of discussions that preceded plaintiff's less than satisfactory FPR. As such, if a new round of FPRs had been requested, the most likely result is that SelectTech still would have prevailed – and the same would likely occur if, as plaintiff now seeks, this court were to order a similar course of conduct. Indeed, it should not be overlooked that the administrative record reveals that the Air Force viewed NVT as essentially the third best of the four competitors, making it highly unlikely that the process plaintiff claims should have occurred would have made any difference. *See Wit Assocs., Inc. v. United States*, 62 Fed. Cl. 657, 664 (2004) (finding no prejudice on analogous facts); *Maint. Eng's v. United States*, 50 Fed. Cl. 399, 426 (2001) (same). Accordingly, plaintiff has not shown that, but for the alleged error, it had a substantial chance of receiving the contract *sub judice*.

Seemingly as an afterthought, plaintiff raises other arguments in support of its protest. One of these – that the Form SF33 signed by SelectTech in September was a new offer – is a bootstrap contention that hinges on the view that SelectTech's August proposal was ambiguous. As the latter view is wrong, so too is this argument. The court has considered, and finds likewise wanting, plaintiff's various other arguments (particularly concerning the rating of its past performance), which simply are untenable in light of the administrative record, the controlling law and the discretion that law confers on the contracting agency here. *See NVT Technologies*, 2006 C.P.D. ¶ 36 at *5-6 (rejecting several of these arguments).[11] It follows that the Air Force

---

[11] At one time, plaintiff argued that the award should be set aside because, between the time of the award and the signing of the final contract, SelectTech agreed to provisions that were not in its August FPR. However, at oral argument, plaintiff's counsel appeared to recognize that this claim was not factually correct, *i.e.*, that the final contract did not include these new provisions. At all events, the "new" provisions that plaintiff originally cited all benefit the government and, if they had been added after the award, would have been covered by FAR § 52.215-1(c)(3)(B), which provides that "a late modification of an otherwise successful proposal

did not act in an arbitrary and capricious fashion, or otherwise contrary to law, in awarding the contract to SelectTech.

## III. CONCLUSION

This court need go no further. Measured by the appropriate standard of review, the Air Force's conduct here was neither erroneous nor prejudicial to plaintiff. Since plaintiff has not proven the merit of its claims, the injunctive relief it requests is inappropriate.

Accordingly –

1. Plaintiff's motion for judgment on the administrative record is **DENIED** and defendant's cross-motion for judgment on the administrative record is **GRANTED**.

2. This opinion shall be published, as issued, after October 5, 2006, unless the parties identify protected and/or privileged material subject to redaction prior to said date. Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons for the redaction.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted." *See also Conscoop-Consorzia Fra Cooperative Di Prod. E Lavoro v. United States*, 62 Fed. Cl. 219, 240 (2004).